The opinion of the Court was delivered by
Dunkin, Ch.
After a careful consideration of the grounds of appeal, this Court is of opinion that the judgment of the Chancellor may be well vindicated upon the facts presented, and is not at variance with any principle heretofore established.
The plaintiffs (the widow and son of Henry M. Tom-linson, deceased,) had filed a bill to marshal the assets of their intestate’s estate. Among the claims presented, under the order of February, 1857, was that of the defendant, Thomas Tomlinson, Sr., (the father of the intestate,) for $8,000. For reasons stated in the petition, the plaintiffs were greatly surprised at this demand, and resisted the payment both before the commissioner, and in the Circuit Court. Their defence was, that the signature of the intestate to the endorsement was not genuine. Much evidence was offered, but the commissioner concluded that the genuineness of the handwriting was sustained by the preponderance of testimony, and this conclusion was sanctioned by the presiding Chancellor, February, 1858. An appeal was taken from this decision, and pending the appeal, to wit: in April, 1858, this petition for rehearing was filed. The application was at first addressed to this Court; but in conformity with the decision of Downes vs. Simpson, 5 Rich. Eq., 422, it was directed to be made to the Circuit Court.
It will be perceived, that the ground upon which the petitioners rely, is the discovery of a new fact, constituting in itself a separate and independent defence, distinct from the defence taken at the original hearing, of which the plaintiffs were then ignorant; and the evidence of which has come to their knowledge since the hearing. If, from the affidavits submitted to him, the Chancellor conceived that the defence *70 was material — that a reasonable foundation was raised for further inquiry into the fact; and was furthermore satisfied, that the evidence was not only unknown to the petitioners at the former hearing, but that their ignorance was not in consequence of a want of due diligence on their part, his direction for re-hearing was properly granted. The material fact, on which the petitioners press their claim, is, that the endorsement, which is the foundation of the defendant’s demand, was an accommodation endorsement of the intestate on a note of William H. Tomlinson, and left in the possession of the latter, many years since — that it had never been used or negotiated by the said W. H. Tomlinson, in the lifetime of the intestate, but was still in his possession as late as 1856, some twelve months after the intestate’s death, and that the note was at, or about, that time, transferred, or assigned, or delivered, by W. H. Tomlinson to the defendant, Thomas Tomlinson, Sr., for the purpose of indemnifying him and his son-in-law, Culpepper Watkins, on account of their sure-tyship for the said W. H. Tomlinson, in the Bank of Wades-borough. If these facts be susceptible of proof, it is scarcely necessary to say that they constitute a new and material element in the defence of the petitioners. As to the existence of the fact, to wit: that the note was in possession of the maker, W. H. Tomlinson, after the death of the intestate; and that it was set on foot subsequently by him, the affidavit of Culpepper R. Watkins, 3 May, 1858, is very distinct; nor is this statement materially affected by his subsequent affidavits of November, 1858, and February, 1859. But, after the petition had been filed, and after the defendant, Thomas Tomlinson, Sr., had been put in possession of the affidavit of C. R, Watkins, of 3 May, 1858, to wit: on 21 October, 1858, he 'also makes an affidavit in reply. It is very material to observe that, although this affidavit is prepared with great care and caution, and, upon subordinate and collateral matters, is very full and positive, the affiant, in no part, undertakes to traverse the important allegation, *71 that the note was set on foot by Wm. H. Tomlinson, and was received by him, the defendant, subsequent to the death of the intestate. The apparent reticence of the defendant in reference to this charge may well have influenced the judgment of the Chancellor in giving leave for further inquiry; and, notwithstanding the affidavits submitted on the part of the defence, the Court is satisfied with the conclusion of the Chancellor, that the evidence was not such as the plaintiffs could, under the circumstances, with due diligence, have procured prior to the original hearing.
Then is the objection well taken, that in order to warrant a rehearing, the after-discovered evidence must be in writing? The appellant is certainly sustained by expressions of opinion on the part of more than one Chancellor in some of our reported cases, but we are not aware of any case in which the abstract proposition has been involved and decided. None such has been adduced. The Court recognizes, fully, not only the encouragement to protracted litigation, but the danger of perjury, in permitting an unsuccessful party to bolster up a defective case by suppletory proof, and the Court has no disposition to encounter such hazard. But we think the distinction is accurately stated by Chancellor Harper, in Cantey vs. Blair, 1 Rich. Eq., 43. “When a party comes into this Court on the ground of newly-discovered evidence, he must shew some tangible and substantial fact, constituting, of itself, a defence, of which the evidence had come to his knowledge since the trial; not particles of testimony, as they are called, or cumulative testimony,” &c. And this is sustained by the instructive case of Baker vs. Whiting, 1 Story C. C. Rep., 218, in which Judge Story says: “The general rule is, not to allow a rehearing upon new-discovered evidence, which is merely cumulative, to the litigated facts already in -issue.” With this qualification, and for such purpose, we are of opinion that newly-discovered evidence, though oral, may serve as the foundation of an application for rehearing. In this case, the evidence pointed to a new *72 fact, constituting a distinct ground of defence, and was strictly within the distinction thus recognized. The effect of the order of the Circuit Court is not to adjudicate the rights of the parties, but to remit them to the ordinary and appropriate tribunal for inquiry and determination.
it is ordered and decreed that the appeal be dismissed.
Johnston and Wardlaw, CC., concurred.

Appeal dismissed.